SANFORD MILLS v. MASSACHUSETTS MOHAIR PLUSH CO. et al.

(Circuit Court of Appeals, First Circuit. November 12, 1902.)

No. 427.

1. PATENTS—INVENTION—PROCESS FOR MAKING PLUSH.

The Goodall patent, No. 605,710, for an improved process of making frisé plush, the essential steps in which are a thorough sizing of the fabric on both sides, and the drying of the size before embossing, is void for lack of patentable novelty, in view of the prior art, and also for direct anticipation.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Suit for infringement of letters patent No. 605,710, for a process for making frisé plush, granted to George B. Goodall June 14, 1898. From a decree dismissing the bill, complainant appeals.

The following is the opinion of the circuit court (LOWELL, District Judge):

This was a bill in equity for the infringement of letters patent No. 605,710, for an improved process of making frisé plush. The two claims of the patent are as follows:

"(1) The herein-described method of producing plush fabric showing at its face a figure or design, which consists in sizing the uncut pile-loops; drying said sized fabric; depressing or crushing down below the level of adjacent pile-loops a portion of said dried, sized, uncut loops, thus leaving some of the sized and dried loops standing and stiff and others depressed; cutting the standing loops to form the plush face; and removing the size from the fabric, which softens the same, and permits the previously-depressed uncut loops of pile to rise and show uncut loops in a field of cut loops in design,—substantially as described.

"(2) The herein-described method of producing plush fabric, which consists in heavily sizing the uncut pile-loops forming the face of the fabric; drying said heavily-sized pile-loops, rendering them stiff for standing against the cutting operation; cutting the loops to form the plush face; and removing the size, leaving the cut loops soft and pliable, substantially as described."

Frisé plush is a plush fabric in which the uncut loops form a pattern on a background of ordinary cut plush, or conversely. Frisé plush had usually been made upon a pattern or Jacquard loom, an expensive, though accurate and otherwise satisfactory process. Not a few attempts had been made to produce the same result by cheaper means, and nearly all the experiments were made in this general fashion: After the plush had been woven in the loop, the figures which were to remain uncut were depressed by embossing.

leaving the loops which were to be cut so as to form the ground standing up above the figures thus depressed. The uncut part thus left standing was then cut, commonly by a reciprocating machine like a lawn mower. The depressed figures were then raised, and the pattern appeared, formed by uncut loops on a ground of cut plush. The fabric thus made was not satisfactory, the outline of the figures being imperfect and ill-defined. Moreover, by reason of the clipping of the cut plush by a reciprocating cutter these uncut figures usually projected somewhat above the cut plush ground. The complainant's process meets this difficulty by sizing heavily and on both sides the whole fabric when uncut and fresh from the loom. The sized fabric is then dried, leaving all the loops standing upright and stiff. The figures are then depressed upon this stiffened fabric by embossing with a heated stamp, which softens the sizing beneath it, and glues the depressed loops to the back of the fabric. The upright loops are then cut, not by a reciprocating machine, but by rotary, vertical knives, so that the height and length of the cut pile is increased, rather than diminished, by the cutting. The sizing is then washed out, and the uncut loops raised to their full height. The figures made by the uncut loops thus appear very slightly lower than the cut plush ground. The method is satisfactory, and a commercial success. The mechanical process which the complainant has sought to patent is the sizing of the uncut fabric for the purposes described.

It is old in many arts to size almost any fabric; old, also, to size a fabric upon both sides. Sizing is applied for all sorts of purposes,—to increase weight, as in cheap cotton goods; to stiffen the fabric, as in shirt bosoms; and so forth. In cut fabrics like plush or velveteen sizing has long been applied to hold the pile fast to the body of the fabric, so that the process of cutting shall not tear out or fray the pile, but shall leave its upper surface even. The functions claimed in argument by the patentee for his sizing are these: First. A fastening of the pile to the body of the fabric, so that the loops shall not be torn out in the cutting, but shall present an even-topped appearance after they are cut, as if they had been cut in the weaving, like ordinary plush. It was old in the art to apply sizing to the back of the fabric for this purpose; and in the Peterson patent it is stated that "it is well to size the fabric first carefully," without specifying if the face, or back, or both are intended. The patentee's use of sizing for this purpose shows no patentable novelty. The complainant's expert Livermore seems of the opinion that for this purpose there is no advantage in sizing the face of the fabric. Second. To fasten down to the body of the fabric the depressed uncut loops which are to form the pattern. Manifestly, sizing tends to glue the depressed loops to the body of the fabric, and to hold them down out of the way of the cutters while these are operating; otherwise the loops might rise in whole or in part during the cutting, and might thus be subjected more or less to the action of the rotary cutters. This function is stated in the Chwalla patent, especially at claim 5 and in Fig. 2, and in the Scott patent. It appears to be without patentable invention. Third. In defining more sharply the depressed figures. It is evident that this may be done by the stamping of sized pile as compared with unsized, if the sized pile is left soft enough to receive the desired impression, and at the same time is made so stiff as to retain the impression after that is received. If no sizing is employed, the impression can easily be made, but the resiliency of the fiber will cause the impression to lose its sharpness as soon as the embossing tool is removed, unless great heat is employed. On the other hand, if an embossing tool is pressed upon a sized material in a wet condition, manifestly the impression will not be so definitely retained as if it were stamped dry, because the moist walls of the depressed figure will tend to fall into the figure itself. This function of retaining a sharp impression may not be expressly stated in any of the prior patents, but it plainly exists therein. It is true that in the Scott patent the stamping is directed to be done while the sizing is wet, but the mere drying before stamping does not appear to constitute a patentable invention. Scott expressly provided for drying before cutting. To dry the size before embossing does not appear to me patentable, though this is claimed by complainant's expert Livermore. Fourth. The stiffening of the upright loops

against the action of the cutter. This is declared by the defendant's expert Browne, and by the complainant's expert Livermore, to be a hurt, rather than an advantage; and upon the whole I suppose this to be the case, though there is a little testimony to the contrary. Most of the apparent contradiction arises from confounding the necessary function of fastening the upright loops firmly in the body of the fabric, and the unnecessary function of stiffening the body of the loops against the cutting machine. Fifth. The greater ease of handling the sized fabric during the necessary operations. This is not claimed in the patent, though it is probably an important function. Doubtless, a patent protects a machine even when that machine is employed in a use not foreseen by the patentee; but where the process sought to be patented, as in this case, is an operation of the commonest sort, that common operation can hardly be made patentable by a useful result of the operation not claimed in the patent, or then known to the patentee. Moreover, the result would be equally effective in the patents of Chwalla, Scott, and Peterson.

It is urged by the complainant that the patent should be sustained by reason of the commercial success obtained by it. But this commercial success appears to me due in large part to the rotary cutter, which the patentee seems to have invented independently, though anticipated by Peterson. This was a more important improvement than the exceptionally abundant use of sizing. It is to be observed that the complainant's expert Livermore limits the "new steps" of the patent in suit to "the permeating the loops with size and thoroughly drying the size before embossing."

For these reasons, I think the invention was without patentable invention, and there must be a decree for the defendants. It thus becomes unnecessary to consider if Aveyard anticipated the manufacture of the complainant.

Bill dismissed, with costs.[1]

Nathan Heard, for appellant.
Frederick P. Fish and W. Orison Underwood, for appellees.

Before COLT, Circuit Judge, and ALDRICH and BROWN, District Judges.

PER CURIAM. We agree with the reasoning and conclusion of the circuit court, and, in view of the prior patents referred to in its opinion, and of the common practice in the manufacture of embossed plush to dry the size before embossing, we are of the opinion that there was no patentable novelty in what the appellant terms the "characteristic" and "essential" steps in the Goodall process, namely, a thorough sizing of the fabric on the pile face and back, and the drying of the size before embossing. Moreover, the appellees have clearly proven that these exact steps were used by Aveyard, their superintendent, long prior to March, 1896, the date of Goodall's alleged invention. This evidence not only supports the view that these steps were merely an application of the common knowledge of those skilled in the art of embossing pile fabrics, but is, in our opinion, sufficient to clearly establish anticipation by Aveyard of what is said to be the essence of the Goodall invention and of the Goodall patent.

The decree of the circuit court is affirmed, and the costs of appeal are awarded to the appellees.

[1] NOTE. The patents referred to in the opinion are the British patent No. 8,547 of 1892, to Otto Petersen, and the French patent of the same year to the same inventor; the British patent No. 18.016 of 1887, to Gustav Chevalla; and the two British patents of 1883 to Dugald Scott, No. 5,902 and No. 5,904.